# Gray *versus* Henderson *et a*ᵥ.

1. A testator directed his land to be sold as soon as "the times will war-
rant, either publicly or privately, so as to make the best of it; should it be
thought best by my executors to divide it into small lots and sell at public
sale, my will is after the lots are tried at public sale * * * the whole pro-
perty be set up together and the sale made in the best manner." He ap-
pointed three executors. By a codicil reciting the distant location of his
executors, and difficulty of attention by them, he appointed M. "my acting
executor, * * * desiring him if convenient to consult the above executors
in the sale of the real estate." *Held*, that a power of sale was expressly
conferred on the executors.

2. By the Act of February 24th 1834, sect. 12, it is enough if in any part
of the will the intention be expressed to confer a power of sale on executors.

3. The power is *implied* when the distribution and management of the
fund arising from a sale is expressly confided to the executor, or when it is
confounded by the testator in one common fund with the personalty, although
there be no express direction to the executor to distribute it.

March — 1872. Before THOMPSON, C. J., SHARSWOOD and
WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Clinton county*: No. 6,
to January Term 1872.

This was an action of ejectment, brought September 12th 1868,
by M. A. Henderson and Margaret his wife in her right, and S. S.
Sheddon and Mary B. his wife in her right, against Hiram T.
Gray, for the undivided half of a lot of two acres of land in Alli-
son township.

The lot in controversy belonged to Alexander Boyd, who died
about June 1845. Mrs. Henderson and Mrs. Sheddon are two
of his four children.

He left a will dated September 26th 1843, with a codicil, dated
April 10th 1844.

The will contained the following clauses :—

"Item: It is my will, and I hereby direct that the place on
which I live be sold as soon after my decease as the times will
warrant, either publicly or privately, so as to make the best of it.
Should it be thought best by my executors to divide it into small
lots and sell at public sale, my will is that after the lots are tried
at public sale and the amount ascertained, that the whole property
be set up together and sale made in the best possible manner."

"Lastly: I do hereby constitute and appoint my son Reading
B. Boyd, Rev. Samuel S. Sheddon and Dr. M. A. Henderson,

[Gray v. Henderson.]

my beloved children, to be the executors of this my last will and testament."

The following is the codicil:—

"Codicil—made this 10th day of April 1844. On reviewing the nominations of executors to my will, their distant location and consequent difficulty of attention to such duties, I do hereby constitute and appoint my beloved friend David McCormick, of Mill Hall, Clinton county, my acting executor to this my last will and testament, desiring him, if convenient, to consult with the above-named executors in the sale of the real estate."

The will was proved June 9th 1845, and letters testamentary issued to David McCormick.

On the trial, November 9th 1870, at a special court before Williams, P. J., of Fourth District, the foregoing facts having been given in evidence by the respective parties, the defendant offered amongst other things to prove that David McCormick, after consultation with Messrs. Henderson and Sheddon, sold the real estate in question on the 30th of March 1846, to James T. Hale, Esq., for $2210.

The court rejected the offer and sealed a bill of exceptions. The verdict was for the plaintiff.

The defendant, on the removal of the case to the Supreme Court, besides other specifications, assigned the rejection of the foregoing offer for error.

*C. S. McCormick* and *G. W. Woodward*, for plaintiff in error. —The will names a party to execute the will, and the power of sale is conferred on him as truly and as expressly as if he had been named in the very clause that directed the sale. A will directs a conversion of realty into personalty, and appoints an executor. That is our case. Swinburn says the executor stands in the shoes of the testator; he is to execute all the will; he is to perform all the lawful acts his testator has enjoined, and it is quite immaterial that he is not named in each instance that a power is devolved or a duty enjoined: 1 Sug. on Powers 133; 1 Williams on Ex'rs. (5th Am. ed.) 580, 581 and notes; Lloyd v. Taylor, 2 Dall. 223; Boshart v. Evans, 5 Wharton 560; Myers's Appeal, 12 P. F. Smith 104; 2 Washb. on Real Property 315.

The reporter received no paper-books of defendant in error.

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—It is undoubtedly true and has been so held by this court in Myers's Appeal, 12 P. F. Smith 104, that no implication merely of a power in executors to sell will take a case out of the jurisdiction of the Orphans' Court under the 12th section of the Act of February 24th 1834, Pamph. L. 73, which provides that "all powers, authorities and directions relating to real

[Gray *v.* Henderson.]

estate contained in any last will and not given to any person by name or by description, shall be deemed to have been given to the executors thereof; but no such power or direction shall be exercised or carried into effect by them, except under the control and direction of the Orphans' Court having jurisdiction of their accounts." But this provision, neither by its letter or spirit, requires that there should be any form in the gift "by name or description." It is not necessary that the testator should say, "I authorize my executors to sell," or "I direct my land to be sold by A. B." It is enough, if in any part of his will his intention is expressed as to who should sell either by name or description. Here we think there is such an intention clearly expressed in the will of Alexander Boyd, not merely implied. "Should it be thought best by my executors to divide it into small lots and sell at public sale, &c." Does not this language *express*, not merely *imply*, that his executors shall sell? We do not see how any other interpretation can be put upon it. The same expression of intention is contained in the codicil. In consequence, as he says, of the distant location of the executors named in the will and consequent difficulty of attention to such duties, he appoints an acting executor, "desiring him, if convenient, to consult with the above-named executors in the sale of the real estate." Does not this *express*, not merely *imply*, that the sale of the real estate was one of the duties which he had devolved on his executors? Implied powers are where the distribution or management of the fund produced by a sale is expressly confided to the executor as stated in Boshart *v.* Evans, 5 Wharton 561, or where the produce of the sale of the realty is confounded by the testator in one common fund with the personalty, even though there is no express direction to the executors to distribute it, as was the case in Myers's Appeal, 12 P. F. Smith 107. But those are very different cases from that presented by the will before us, where the testator in two places expresses in words his intention that his executors should sell, and that the duty of the sale should devolve upon them.

The determination of this point in favor of the power exercised by the executor renders unnecessary the consideration of any other question raised upon this record.

Judgment reversed, and a *venire facias de novo* awarded.